IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KENNETH R. WRIGHT,                               :

    Plaintiff,                                :

v.                                               :         CA 13-00511-C

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,          :

    Defendant.                                :

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 22 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record ("R.") (doc. 13), the Plaintiff's brief (doc. 14), the Commissioner's brief (doc. 19), and the arguments presented at the October 9, 2014 hearing, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* doc. 22 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

I. **Procedural Background**

On or around July 23, 2010, the Plaintiff filed an application for DIB (R. 131; *see* R. 23), alleging disability relating to the following ailments: "acute pancrea[titis]," "colon duct problem," "gall bladder problem," "diabetes," "cholest[e]rol," and "arthritis in [the] left knee." (R. 135.) He stated that he became disabled on August 2, 2008, (R. 131), and his date last insured was December 31, 2008, (*id.*). His application was initially denied on September 23, 2010, (R. 56-59). A hearing was then conducted before an Administrative Law Judge on December 15, 2011. (R. 35-53). On January 20, 2012, the ALJ issued a decision finding that the claimant was not disabled at any time from the date of alleged onset to the date he was last insured, (R. 23-30), and, on January 28, 2012, the Plaintiff sought review from the Appeals Council, (R. 19). On October 10, 2013, the Appeals Council issued a decision declining to review the ALJ's decision. (R. 1-3.) Therefore, the ALJ's determination was the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 404.981. The Plaintiff filed a Complaint in this Court on October 23, 2013. (Doc. 1.)

II. **Standard of Review and Claims on Appeal**

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work.[2] *Jones v. Bowen*, 810 F.2d 1001, 1005

---

[2] Additionally, in a case such as this where the Plaintiff seeks DIB,

> [the P]laintiff must prove he has a medically determinable impairment or impairments of sufficient severity to constitute a disability as contemplated by the Act **and** that the impairment or impairments became disabling while he was insured for disability purposes. The Act places the burden of establishing disability on the [P]laintiff. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *see also* 42 U.S.C. § [] 423(c)(1); 20 C.F.R. § 404.1512(a). In order to receive disability insurance benefits or a period of disability, [the Plaintiff] must establish that h[is] condition became disabling before the expiration of h[is] insured status on [December 31, 2008]. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982) (Claimant "must show that she was disabled on or before the last day of her insured status."). If [the

(11th Cir. 1986). In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history. *Id.* Once the plaintiff meets this burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although at the fourth step "the [plaintiff] bears the burden of demonstrating an inability to return to his [or her] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny Plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence."

---

P]laintiff bec[ame] disabled after [his] insured status . . . expired, the claim must be denied despite disability. *See*[] *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano,* 574 F.2d 274 (5th Cir. 1978); *Morgan v. Astrue,* [No. 07-60726-CIV,] 2008 WL 4613060, [at] *13 (S.D. Fla. Oct. 15, 2008) ("If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied, despite her disability."); *Benjamin v. Apfel,* [No. CIV. A. 99-0738-P-L,] 2000 WL 1375287, [at] *3 (S.D. Ala. August 02, 2000) ("If a claimant becomes disabled after her insured status has expired, her claim must be denied despite her disability.")[.]

*Dumas v. Colvin*, Civil Action No. 12-00518-N, 2013 WL 4523584, at *4 (S.D. Ala. Aug. 27, 2013) (emphasis added).

*Davison v. Astrue*, 370 F. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).  And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence."  *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, the Plaintiff asserts one claim: that "[t]he ALJ reversibly erred in failing to obtain the opinion of a medical expert to determine whether the Plaintiff's progressi[ve] chronic pancreatitis was disabling prior to his date last insured."  (Doc. 14 at 1.)  For the reasons discussed below, the Commissioner's decision denying the Plaintiff benefits should be affirmed.

### III.    Relevant Medical Evidence

In July and August 2008, the Plaintiff was hospitalized and treated for pancreatitis.  (R. 171-80.)  On July 20, 2008, he presented to Springhill Medical Center with complaints of severe abdominal pain, which apparently resulted from a three-day drinking binge.  (R. 172.)  Dr. Raymond Bell[3] examined the Plaintiff and diagnosed him with acute pancreatitis, history of alcoholism, chronic obstructive pulmonary disease, and hypertension.  (*Id.*)  A CT scan was performed, which revealed both acute pancreatitis and chronic pancreatitis.  (R. 176.)  After receiving treatment for eleven days, his condition improved, and on July 31, 2008, he was discharged.  (R. 171.)  On August 4, 2008, the Plaintiff was readmitted to the hospital after presenting to the emergency room with epigastric and left upper quadrant pain.  (R. 178-79.)  He was

---

[3]    Dr. Bell's office notes indicate that, for several years prior to 2008, Dr. Bell treated the Plaintiff for various medical issues including hypertension, high cholesterol, low potassium, and gastroesophageal reflux disease (GERD).  (R. 186-98.)

4

diagnosed with acute pancreatitis, pneumonia,[4] hypokalemia, and hypertension. (*Id.*) He was treated and discharged on August 6, 2008, after his pancreatitis began resolving. (R. 177.)

On August 26, 2008, the Plaintiff saw Dr. Bell for a follow up visit following his hospitalization. (R. 199.) Dr. Bell noted the Plaintiff's pancreatitis, but did not indicate that the Plaintiff was in significant pain or otherwise having acute problems related to his pancreatitis at that time. (*Id.*) Dr. Bell continued the Plaintiff's medications for his hypertension, high cholesterol, low potassium, and GERD. (*Id.*) Dr. Bell did not prescribe any treatment for Plaintiff's pancreatitis. (*Id.*) Dr. Bell advised the Plaintiff to return for a follow up visit in three months. (*Id.*) On November 25, 2008, the Plaintiff returned for his next visit with Dr. Bell. (R. 200.) The Plaintiff complained of having pain in his left shoulder following his lung surgery. (*Id.*) Dr. Bell continued Plaintiff's previous medications and did not prescribe any treatment for Plaintiff's pancreatitis. (*Id.*) However, Dr. Bell did order a CT scan of the Plaintiff's abdomen, which was performed on December 4, 2008. (R. 204.) The report from the CT scan indicates that, as compared to a previous CT scan on August 8, 2008, the "pseudocyst formation near the tail of the pancreas and adjacent inferior spleen decreased in size significantly . . . [and] [t]he other areas of pseudocyst formation ha[d] resolved radiographically." (*Id.*) The report also indicated that calcifications were still present in the head of the pancreas and that the pancreatic duct was still dilated, though slightly less than in August 2008. (*Id.*) The Plaintiff next visited Dr. Bell on June 16, 2009, when he had pain and swelling

---

[4] Additionally, in August 2008, the Plaintiff underwent lung surgery to treat his pneumonia. (*See* R. 182-85.) On August 29, 2008, the Plaintiff visited his pulmonologist for a post-operative visit. (R. 182.) By that time, the Plaintiff had fully recovered from surgery and was no longer having any pulmonary problems. (*Id.*; *see* R. 182-83.)

in his left knee. (R. 201.) Dr. Bell diagnosed the Plaintiff with arthritis and continued prescribing medications for the Plaintiff's hypertension, high cholesterol, low potassium, and GERD. (*Id.*) Dr. Bell also indicated that an examination of the Plaintiff's abdomen was normal. (*Id.*)

On November 30, 2009, a CT scan of the Plaintiff's abdomen was performed and the findings were consistent with chronic pancreatitis. (R. 246.) The CT report also included findings of wall thickening and luminal narrowing in the distal stomach. (*Id.*) The radiologist who authored the report suggested that a follow up endoscopy should be considered. (*Id.*) On December 8, 2009, the Plaintiff had an initial visit with Dr. F. Steven Orleans, the gastroenterologist who would perform his endoscopic procedure. (R. 242.) The Plaintiff reported that he was having "occasional abdominal pain." (*Id.*) He was not having any nausea or vomiting. (*Id.*) Dr. Orleans noted that it had been sixteen months since "his last episode of severe pancreatitis in which he was hospitalized," developed pneumonia and underwent lung surgery. (*Id.*) Dr. Orleans performed a physical examination and determined that the Plaintiff was "[w]ell-developed, well-nourished . . . [and] in no apparent acute distress." (*Id.*) Nevertheless, Dr. Orleans found that the Plaintiff had chronic pancreatitis, questionable narrowing and wall thickening in the distal stomach, and gallbladder polyps. (R. 243.) Dr. Orleans prescribed viokase, a medication to treat the Plaintiff's pancreatitis, and scheduled an esophagogastroduodenoscopy (EGD) and colonoscopy. (*Id.*) On December 21, 2009, Dr. Orleans performed the EGD and colonoscopy on the Plaintiff. (R. 240-41.) The EGD revealed no areas of inflammation or ulceration, (R. 240), and the colonoscopy revealed mild diverticulitis, (R. 241). Dr. Orleans referred the Plaintiff to Dr. Matthew Eves for an endoscopic ultrasound (EUS), which was performed on February 3, 2010. (R. 249-50.) The EUS revealed "chronic pancreatitis secondary to stones within the pancreatic

duct." (R. 250.) Dr. Eves recommended that the Plaintiff undergo "[e]ndoscopic retrograde cholangiopancreatography (ERCP) with dilation and stenting of the pancreatic duct." (*Id.*) Dr. Eves performed the ERCP on April 2, 2010, but it was unsuccessful because Dr. Eves was unable to cannulate the pancreatic duct. (R. 219-30.) Following the ERCP, the Plaintiff was admitted to the hospital for monitoring and post-procedural treatment. (*Id.*) He was discharged on April 6, 2010, after his condition improved. (R. 219.) He had no complaints of abdominal pain at that time. (*Id.*) On June 30, 2010, the Plaintiff underwent a second ERCP, in which Dr. Eves was able to successfully cannulate the Plaintiff's pancreatic duct, dilate the duct and place a stent. (R. 257-60.) Dr. Eves noted that the pancreatic duct was markedly strictured and that it will probably take multiple procedures over the course of a year to fully dilate the pancreatic duct. (*Id.*) The Plaintiff was prescribed Creon to treat his pancreatitis. (R. 258.)

From June 2010 to August 2011, the Plaintiff underwent serial ERCP procedures to progressively dilate and stent the Plaintiff's pancreatic duct to allow for proper drainage. (R. 257-356.) During this period, the Plaintiff had some complications when one of the stents became embedded, (R. 271-76); however, that stent was removed and the Plaintiff improved, (R. 275-76, 316). On August 19, 2011, Dr. Eves removed the final stent without complication and the pancreatic stent treatment was completed. (R. 320-21.) On October 11, 2011, the Plaintiff had a follow up visit with Dr. William Gewin. (R. 375-78.) Dr. Gewin noted that the Plaintiff continues to suffer from chronic pancreatitis and that he had been treated with pancreatic stents. (*Id.*) Dr. Gewin also noted that the Plaintiff continued to have abdominal pain, but did not have nausea, vomiting, diarrhea, constipation or blood in his stool. (*Id.*) Dr. Gewin continued the

Plaintiff's Creon medication to treat his pancreatitis and advised the Plaintiff to return to see Dr. Eves in December 2011. (*Id.*)

On October 13, 2011, the Plaintiff presented to Dr. Keith Varden for a disability examination. (R. 365-74.) During that examination the Plaintiff reported "generalized weakness and fatigue"; "chronic recurring abdominal pain"; "poorly controlled diabetes"; "occasional nausea[,] mostly without vomiting"; and "some occasional shortness of breath." (R. 365.) The Plaintiff denied having chest pain, rashes, "significant weight changes or other pertinent positives upon constitutional review [of] systems." (*Id.*) The Plaintiff also stated that one of his physicians had advised him "not to do any vigorous work or work outside in the yard because of [the] possibility of him passing out." (*Id.*) After examining the Plaintiff, Dr. Varden concluded that

> [t]he patient appears to have significant debility related to his pancreatitis and difficulties to control diabetes. This also seems to be affected by activity level as instructed by his current physician regarding overexertion and strenuous activity leading to fluctuations in blood sugars and history of a near syncopal type activity. . . . [T]herefore[, Dr. Varden] consider[ed] him disabled for most types [of] work-related activities[,] especially those involving heavy lifting[,] walking[,] increased exertion[,] exposure to heat and other job expected duties.

(R. 367.) Dr. Varden also completed a medical source statement regarding the Plaintiff's ability to perform work-related activities, (R. 369-74), which the ALJ found to be consistent with light work, (R. 27).

## IV.   ALJ's Decision

On January 20, 2012, the ALJ issued a decision finding that the Plaintiff "was not disabled . . . through December 31, 2008, the last date insured. (R. 23-30.) In reaching his decision, the ALJ found that the Plaintiff was not engaged in substantial gainful activity during the period between his alleged onset date, August 2, 2008, and the date he was last insured. (R. 25.) The ALJ found that, "[t]hrough the date last insured, the

[Plaintiff] had the following severe impairments: chronic pancreatitis and hypertension." (*Id.* (emphasis omitted).) The ALJ concluded that, through the date last insured, the Plaintiff did not meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (R. 27.) The ALJ made the following findings with respect to the Plaintiff's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium word as defined in 20 CFR 404.1567(c) except he should not be exposed to dangerous machinery or work at heights. This limitation is to account for his allegation that he has fainting spells and that a physician had advised him he might pass out. To account for his abdominal tenderness from pancreatitis, the claimant is limited to occasional stooping, kneeling, crouching and crawling and to frequently, as opposed to continuously, reaching, handling, fingering and feeling.

(R. 27-28 (emphasis omitted).) Based on the testimony of the vocational expert, the ALJ concluded that the Plaintiff "was capable of performing past relevant work as a mental health specialist" through the date last insured, and, thus, he was not disabled. (R. 29.)

## V.  Analysis

As mentioned above, the sole argument asserted by the Plaintiff is that the ALJ erred by failing to obtain a medical expert to opine as to whether the Plaintiff's chronic pancreatitis, a slowly progressive condition, was disabling before December 31, 2008, the date he was last insured. The Plaintiff relies on Social Security Ruling 83-20 and *McManus v. Barnhart*, an opinion from the Middle District of Florida interpreting SSR 83-20. (Doc. 14 at 2 (quoting SSR 83-20; *McManus v. Barnhart*, No. 5:04-CV-67-OC-GRJ, 2004 WL 3316303, at *6 (M.D. Fla. Dec. 14, 2004)).) SSR 83-20 provides in relevant part as follows:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be

9

>   determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20. In *McManus*, the Middle District of Florida concluded that, based on its interpretation of SSR 83-20, the ALJ erred by failing to obtain the advice of a medical expert as to whether the onset of the plaintiff's disability occurred prior to the date of last insured. *McManus*, 2004 WL 3316303, at *6-9. The court explained the applicability of SSR 83-20 as follows:

>   Because the issue of onset is inextricably tied to the determination of disability in cases where the impairment is a slowly progressive condition that is not traumatic in origin, the Court concludes that the most logical interpretation of SSR 83-20 is to apply it to situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous. Accordingly, in those situations the ALJ should be required to obtain the advice of a medical advisor to assist the ALJ in making the determination from the available medical evidence of whether the slowly progressive impairment constituted a disability prior to the date last insured.

*Id.* at *6.

The Plaintiff's reliance on SSR 83-20 and *McManus* is misplaced because the ALJ never found the Plaintiff disabled in this case, (R. 23-30).[5] The Eleventh Circuit has twice held in unpublished opinions that an ALJ is only required to obtain the opinion of a medical expert to determine the date of disability onset if the ALJ first concludes that the plaintiff is disabled. *See Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. Mar. 27, 2014) ("The plain language of SSR 83-20 indicates that it is applicable

---

[5] As discussed above, the ALJ specifically found that the Plaintiff was not disabled prior to his date last insured. (R. 30.) The ALJ also granted weight to the opinion of Dr. Varden that the Plaintiff was able to perform light work in October 2011. (R. 29.)

10

only after there has been a finding of disability and it is then necessary to determine when the disability began." (citation omitted)); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. Aug. 6, 2010) ("We conclude that the ALJ did not contravene SSR 83-20 because the ALJ ultimately found that [the plaintiff] was not disabled, and SSR 83-20 only required the ALJ to obtain a medical expert in certain instances to determine a disability onset date after a finding of disability."). This Court has followed that determination by the Eleventh Circuit previously, *Odom v. Astrue*, No. CA 11-0492-C, 2012 WL 2568222, at *7 (S.D. Ala. July 3, 2012) ("[T]his Court agrees with the defendant that since the ALJ did not determine that [the plaintiff] was disabled, there was no need to establish an onset date pursuant to SSR 83-20 (or otherwise). In other words, SSR 83-20 has no application to this case."), and it does so here as well. Thus, the undersigned concludes that SSR 83-20 does not apply to this case, and the ALJ did not err by failing to obtain the opinion of a medical expert to determine whether the Plaintiff was disabled as a result of his chronic pancreatitis prior to his date last insured.

Furthermore, SSR 83-20 also is inapplicable to this case because the Plaintiff's medical records are not inadequate or ambiguous. *See Caces*, 560 F. App'x at 939 ("There was no need for assistance from a medical advisor to determine the date of onset because the unambiguous medical evidence shows [the plaintiff] was not disabled before the date of last insured."); *Gregory v. Astrue*, No. 5:09-cv-517-Oc-TEM, 2011 WL 1100292, at *6 (M.D. Fla. Mar. 23, 2011) ("Here, the medical evidence during the insured period was neither inadequate nor ambiguous. While Plaintiff's condition may have become progressively worse over time, the ALJ had sufficient medical evidence upon which to base her determination that Plaintiff was not disabled prior to June 30, 2001. That Plaintiff received limited treatment during the insured period does not render the evidence inadequate or ambiguous; rather, it further supports the ALJ's finding that

Plaintiff was not disabled. Accordingly, the ALJ had no obligation to obtain a medical expert."); *McManus*, 2004 WL 3316303, at *7 ("[T]he ALJ is only required to secure the assistance of a medical advisor where the medical evidence of record is ambiguous or inadequate.").

The Plaintiff's medical records clearly support the ALJ's determination that the Plaintiff's chronic pancreatitis was not disabling prior to the date of last insured. The medical records show that, prior to the Plaintiff's date last insured, the Plaintiff only required treatment for his pancreatitis for a period of a few weeks in late July and early August of 2008 when he was hospitalized due to an episode of pancreatitis that apparently resulted from a three-day drinking binge. (R. 171-80.) During the course of the sixteen months following that episode, the Plaintiff saw Dr. Bell for follow-up visits on three occasions and did not report any serious complaints related to his pancreatitis. (R. 199-201.) While the Plaintiff was prescribed medications for his hypertension, GERD and other conditions during that period, his pancreatitis did not require any treatment. (*Id.*) In December 2009, nearly one year after the Plaintiff's date last insured, the Plaintiff reported occasional abdominal pain during a visit with Dr. Orleans. (R. 242.) Dr. Orleans examined the Plaintiff and determined that he was "well-nourished" and "in no acute distress." (*Id.*) Dr. Orleans noted that the Plaintiff had not had an episode of pancreatitis for sixteen months; however, Dr. Orleans decided to perform an EGD in light of the Plaintiff's chronic pancreatitis and questions regarding possible narrowing and wall thickening in the Plaintiff's distal stomach. (R. 240, 242.) Additionally, Dr. Orleans prescribed the Plaintiff medication to treat his pancreatitis, (R. 243), and referred the Plaintiff to Dr. Eves who began treating the Plaintiff's pancreatitis in 2010 by dilating and stenting the pancreatic duct, (R. 219-60).

The Plaintiff's testimony is consistent with this general course of treatment. The Plaintiff testified that the symptoms related to his pancreatitis were much worse in 2011 than they were in 2008, (R. 45), that he was not receiving medication for his pancreatitis prior to 2010, (R. 44), and that he did not begin undergoing stenting procedures until the end of 2009 or the beginning of 2010, (R. 40).

Because the medical evidence of record adequately and unambiguously shows that the Plaintiff's pancreatitis was not disabling prior to his date last insured,[6] the ALJ was not required to procure the opinion of a medical expert to assist in that determination. Therefore, for this additional reason, the ALJ's failure to obtain such an expert was not error.

## VI.    Conclusion

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying the Plaintiff benefits be **AFFIRMED**.

**DONE and ORDERED** this the 23rd day of March 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[6] The undersigned notes that the ALJ discussed the Plaintiff's testimony and medical records in detail, (R. 25-30), and reasonably concluded based on that evidence that the Plaintiff was not disabled prior to his date last insured, (*id.*). Given the evidence of record, including Dr. Varden's findings regarding the Plaintiff's work restrictions, which the ALJ found to be consistent with the Plaintiff's ability to perform light work in 2011, (R. 27, 29), and given the Plaintiff's testimony that his condition was much worse in 2011 than it was in 2008, (R. 45), the undersigned concludes that the ALJ's decision is supported by substantial evidence.